# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| In re:<br><br>HAROLD ALFRED MUELLER,<br><br>    Debtor. | Case No.  09-12304-RGM<br>(Chapter 7) |
| ATM CONTRACTING, INC.,<br><br>    Plaintiff,<br><br>vs.<br><br>HAROLD ALFRED MUELLER,<br><br>    Defendant. | Adv. Proc. No. 09-01158 |

## MEMORANDUM OPINION

This Memorandum Opinion addresses the amount of attorneys' fees to be awarded to ATM Contracting, Inc.

### Background

ATM Contracting, Inc., was the general contractor on a contract with the City of Charlottesville, Virginia, to renovate the Central Fire Station. ATM subcontracted the window replacement work to Virginia Glass Company, a company owned by Harold Alfred Mueller, the debtor in this case. Virginia Glass, in turn, purchased the windows from Win-Vent Architectural Windows.

Difficulties arose with the installation of the windows which Virginia Glass asserted were Win-Vent's responsibility which Win-Vent denied. Although Win-Vent sent invoices to Virginia

1

Glass for the windows used in the project, Virginia Glass did not pay them. Notwithstanding the unpaid invoices, Mueller, as president of Virginia Glass, executed lien waivers required by ATM as a condition precedent to paying Virginia Glass. The lien waivers certified that all vendors had been paid for the work and materials furnished to Virginia Glass. In reliance on the lien waiver, ATM paid the invoices. Virginia Glass did not pay Win-Vent from the payment received. Win-Vent later made a claim against ATM's payment bond. ATM paid the bonding company $70,000.00.

## Procedural History

ATM filed a complaint and a petition for attachment against Virginia Glass[1] and Mueller in the Circuit Court for the City of Charlottesville, Virginia. On July 17, 2007, before that circuit court case had progressed very far, Virginia Glass filed a chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Western District of Virginia.[2] A week after Virginia Glass filed its petition, it filed a motion to sell all of its assets free and clear of liens. The hearing on the motion was held on August 20, 2007, and the order authorizing the sale was entered on August 21, 2007.

ATM filed a motion for relief from the automatic stay on October 23, 2007. It sought to modify the automatic stay so that it could proceed with the case then pending in the circuit court. It stated that it wanted to liquidate the amount due to it by Virginia Glass, determine the amount of damages that were pre-petition and post-petition and obtain a judgment against Mueller. It also asserted that it needed relief so that it could take discovery in the case. ATM acknowledged in its

---

[1] Virginia Glass Company is the trade name for Mueller Enterprises, Inc.

[2] The court takes judicial notice of the docket and the pleadings filed in the case.

motion that the automatic stay did not apply to Mueller but stated that it had released a January 16, 2008 trial date because the "nature of the claims" against Virginia Glass and Mueller precluded it from proceeding without relief from the Bankruptcy Court.

Virginia Glass opposed the motion, asserting that all of the relief requested could be obtained in the Bankruptcy Court more efficiently. The motion was granted. The last paragraph of the order stated that the automatic stay did not apply to Mueller because he was not in bankruptcy.

Virginia Glass later requested that its bankruptcy case be dismissed. The motion was granted on July 1, 2008.

ATM took some action in the circuit court after the relief from stay order was entered, but, before any significant effort was expended Mueller filed a chapter 7 petition in this court. ATM filed this adversary proceeding seeking a determination that the debt arising from Mueller's misrepresentations in the lien waivers was not dischargeable pursuant to 11 U.S.C. §523(a)(2)(A). This court granted ATM's motion for summary judgment, awarded judgment to ATM in the amount of $70,000, and took the issue of the amount of attorney's fees under advisement.

### Attorneys Fees

The subcontract and the lien waiver both provide that ATM may recover its reasonable attorney's fees. *See* Subcontract, Ex. 8, §XI, ¶A and Lien Waiver, Ex.19. The question is not whether ATM is entitled to recover its reasonable attorney's fees, only the amount. The only evidence in the record is the Declaration of Alan Zick. Ex. 38. The attorney's time records are attached to it. ATM requests a total of $64,192.87, for the following categories of work.

Resolution of Bond Claim. ATM requests $1,259.29 to reimburse it for the payment of the

bonding company's attorneys in resolving the bond claim. The bond provided that ATM would be responsible for the bonding company's attorney's fees. The fees were both reasonable and necessary.

Virginia Department of Professional and Occupational Regulation. ATM filed a complaint against Mueller before the DPOR and successfully obtained sanctions against Mueller. This action, however, was not one to collect its debt against Virginia Glass or Mueller and does not fall under the indemnity or attorney's fees provisions of the subcontract or lien waivers.

Circuit Court Suit. ATM filed a complaint and petition for attachment in the circuit court against both Virginia Glass and Mueller before Virginia Glass filed bankruptcy. The fees requested, $3,282.00, were both reasonable and necessary. After ATM obtained relief from the automatic stay, it further pursued the matter in the circuit court. It incurred an additional $2,560.50 in fees before Mueller filed his personal petition. The fees incurred were both reasonable and necessary.

Virginia Glass Bankruptcy. ATM requests $7,720.91 in fees and costs for the work the first law firm performed in the Virginia Glass bankruptcy. The attorney's time records are somewhat sketchy. Standing alone, they do not allow the court to determine what was done on specific dates. They reflect telephone calls, emails and research, but not what the telephone calls, emails or research related to. More information could have been provided without violating the attorney-client privilege. In this case, the court took judicial notice of the docket and the pleading in the Virginia Glass bankruptcy case, all of which are publicly available over the internet through the Electronic Case Filing and Case Management system all bankruptcy courts now use. By examining the docket and the pleading, the court was able to determine what the time entries related to. Essentially, there were two tasks that the law firm undertook. The first was general monitoring of the case. The fees

reasonably related to this task are appropriate and will be awarded. It is the second task that is troubling.

The second task was obtaining relief from the automatic stay so as to permit the circuit court case to continue. There are two difficulties. First, Virginia Glass was an empty vessel after the bankruptcy and a judgment against it was worthless. Second, the circuit court case as to Mueller was clearly never stayed and relief from the stay was unnecessary as to him.

ATM sought a pre-judgment attachment against Virginia Glass because it saw a notice in the *Daily Progress* that Virginia Glass intended to sell all of its assets. ATM knew of the bankruptcy almost immediately. The time record for ATM's attorneys for July 24, 2007, a week after the petition was filed, stated: "E-mail from [client]; research regarding bankruptcy act and rules; e-mail to [client]." Ex. 38. The court docket shows that Virginia Glass filed its motion to sell all of its assets free and clear of liens on that same day. The motion stated that the two secured creditors consented to the motion and that there would be no money available to pay unsecured creditors. The motion was granted at a hearing on August 20, 2007 and the order was entered the following day. The motion for relief from the stay was filed on October 23, 2007.

In these circumstances, relief from the automatic stay achieved nothing. Any judgment obtained against Virginia Glass would be worthless. Its assets had been sold and distributed to its secured lenders. There were no funds available for distribution to unsecured creditors. ATM admitted as much in its motion. It asserted, however, that it needed relief so that it could conduct discovery and use the judgment to recover against Mueller. The automatic stay does not preclude discovery against a debtor. The clearest example is where the debtor is not a party to the litigation. A debtor, like any other citizen, has an obligation to participate in judicial proceedings by

5

responding to subpoenas. A similar result obtains when the debtor is a party to litigation continuing against others although stayed as to it. A debtor is required to respond to discovery as long as it is not directed to collecting a debt from it. In addition, Fed.R.Bankr.P. 2004 allows creditors to obtain certain information from a debtor. Here, the motion for relief was filed after the bankruptcy court approved the sale of its assets, a time when it was clear a judgment against Virginia Glass would be meaningless.

ATM could have proceeded against Mueller without relief from the automatic stay. There was nothing in the circuit court complaint that so tied Virginia Glass to Mueller that the case against Mueller could not have continued to judgment. The issue was straight forward: Were the lien waivers accurate? This required little more than evidence from Win-Vent that its invoice was unpaid at the time that the lien waivers were executed and Mueller's knowledge of this fact.

Some time is appropriate to review the scope and applicability of the automatic stay, but the motion should not have been filed. It was unnecessary. It did not advance ATM's cause. Attorney's fees and costs in the amount of $3,562.00 will be allowed for monitoring the bankruptcy case and reviewing the extent and applicability of the automatic stay.

Mueller's Bankruptcy. The attorney's fees incurred in this bankruptcy case are the most significant portion of the fees requested. ATM requests $50,404.46, a significant fee for this adversary proceeding. The first law firm retained by ATM was working on the circuit court case when Mueller filed his bankruptcy. It incurred $225.00 in fees to consult with ATM about the petition. Basically, it closed its file and referred the case to another firm closer to this court.

The second law firm attended the first meeting of creditors and filed this adversary proceeding. This complaint in the adversary proceeding followed the circuit court proceeding

except that it added a count seeking to pierce the corporate veil. This complicated the case and resulted in additional attorney's fees. It is this added element that is troubling. ATM had a strong case without this allegation. Summary judgment was granted without considering this element. The addition of the allegation caused the attorney's fees to climb to more than 70% of the amount recovered.[3] The additional allegation was unnecessary and the fees, particularly in light of the likely recovery and the actual recovery, ceased to be reasonable. The reasonable and necessary fees and costs were $39,389.46.

## Conclusion

Attorneys' fees in the amount of $50,278.25 will be awarded.

Alexandria, Virginia
April 28, 2010

/s/Robert G. Mayer

Robert G. Mayer
United States Bankruptcy Court

Copy electronically to:

Richard J. Stahl
Craig B. Young

15930

---

[3]ATM sought additional damages, such as lost profits, which were denied. There was no evidence that Mueller's conduct was the proximate cause for the downturn in ATM's business, particularly here, where the entire economy suffered a significant downturn.